## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**DENNIS P. CHAVEZ,**

    **Plaintiff,**

**v.**                                                                                                          **No. 20-cv-0058 SMV**

**ANDREW SAUL,**
**Commissioner of the Social Security Administration,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 17], filed on June 10, 2020. The Commissioner responded on August 18, 2020. [Doc. 18]. Plaintiff replied on August 25, 2020. [Doc. 19]. The parties have consented to my entering final judgment in this case. [Doc. 8]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds a lack of substantial evidence to support some of the Administrative Law Judge's factual findings. Those unsupported findings, therefore, cannot sustain the rejection of the opinions from Physician's Assistant ("PA") Maroney or Psychologist Baum. Accordingly, the Motion will be granted, and the case will be remanded for further proceedings. *See* 42 U.S.C. § 405(g) (sentence four) (2018).

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981; 416.1481. This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation marks omitted).

### Applicable Law and Sequential Evaluation Process

In order to qualify for disability benefits, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (2018); *see* 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920 (2012). At the first four steps of the evaluation process, the claimant must show: (1) he is not engaged in "substantial gainful activity"; *and* (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) his impairment(s) either meet or equal one of the "Listings"[2] of presumptively disabling impairments; *or* (4) he is unable to perform his "past relevant work." §§ 404.1520(a)(4)(i)–(iv), 416.920(a)(4)(i)–(iv); *see Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If he cannot show that his impairment meets or equals a Listing, but he proves that he is unable to perform his "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## Procedural Background

Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income November 10, 2016. Tr. 15. He alleged a disability-onset date of September 24, 2016. *Id.* His claims were denied initially and on reconsideration. *Id.* Administrative Law Judge

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

("ALJ") Stephen Gontis held a hearing on September 9, 2018, in Albuquerque, New Mexico. Tr. 15, 34. Plaintiff appeared in person with his attorney. Tr. 15, 34. The ALJ heard testimony from Plaintiff and an impartial vocational expert ("VE"), Karen N. Provine. Tr. 15, 34–87.

The ALJ issued his unfavorable decision on November 26, 2018. Tr. 15–28. He found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017. Tr. 18. At step one, he found that Plaintiff had, in fact, engaged in substantial gainful activity ("SGA") since September 24, 2016, his alleged onset date.[3] *Id.* The ALJ found that Plaintiff performed SGA from November 2017 through the first quarter of 2018. *Id.* However, in the second and third quarters of 2018, Plaintiff's part-time work was too little to amount to SGA. *Id.* Accordingly, the ALJ found that this work did not preclude Plaintiff's disability claim, because if Plaintiff were otherwise disabled, it would constitute an unsuccessful work attempt. *Id.*

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative joint disease of the bilateral knees and left shoulder, depression, and anxiety. *Id.* The ALJ also found that Plaintiff's alcohol abuse was not severe because he had been sober for five years. *Id.*

At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 19–21. Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 21–26. The ALJ found that Plaintiff had

---

[3] To be eligible for disability benefits, a person must be unable to engage in SGA. A person who is earning more than a certain monthly amount is ordinarily considered to be engaging in SGA. 20 C.F.R. §§ 404.1574, 416.974. In 2017, the monthly amount was $1,170; in 2018, it was $1,180. SOCIAL SECURITY ADMINISTRATION, SUBSTANTIAL GAINFUL ACTIVITY, https://www.ssa.gov/oact/cola/sga.html (last visited December 28, 2020).

>    the [RFC] to perform sedentary work as defined in 20 [C.F.R. §§] 404.1567(a) and 416.967(a) except [Plaintiff] can lift and carry 10 pounds occasionally, less than 10 pounds frequently. [Plaintiff] can sit for 6 hours, stand for 2 hours, and walk for 2 hours in an 8-hour workday. [Plaintiff] can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but never climb ladders, ropes, or scaffolds. [Plaintiff] can occasionally reach overhead with the left, non-dominant extremity, and frequently reach overhead with the right. For all other reaching, [Plaintiff] can reach frequently, bilaterally. [Plaintiff] is able to perform simple, routine tasks, frequently interact with supervisors and coworkers, occasionally interact with the public, and tolerate few changes in a routine work setting.

Tr. 21.

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work as a horticultural worker, construction worker, tractor operator, or housekeeping cleaner. Tr. 26. Accordingly, the ALJ went on to consider Plaintiff's RFC, age, education, work experience, and the testimony of the VE at step five. Tr. 27–28. He found that Plaintiff could perform work that existed in significant numbers in the national economy and, therefore, was not disabled. *Id.* The Appeals Council denied review on November 22, 2019. Tr. 1–3. Plaintiff timely filed the instant action on January 21, 2020. [Doc. 1].

## Discussion

Plaintiff challenges the ALJ's rejection of two source opinions. [Doc. 18] at 13–25. The ALJ explained that he was rejecting the source opinions because, in part, they were inconsistent with the record. Tr. 25. Plaintiff challenges how the ALJ has characterized the record. Plaintiff argues that the source opinions are not inconsistent with record. The Court agrees. There is not substantial evidence to support the ALJ's determination that the source opinions are inconsistent with the record. Although the ALJ gives other reasons to reject the source opinions, those other

5

reasons are either legally improper or insufficient to sustain rejection of the opinions. Remand is required for reevaluation of the record.

<u>The ALJ's characterization of the record is not supported by substantial evidence.<br>
Accordingly, the ALJ's finding that PA Maroney's and Dr. Baum's opinions<br>
are inconsistent with the record is not supported by substantial evidence<br>
and cannot sustain their rejection.</u>

To illustrate the mischaracterization of the record, the Court focuses on the ALJ's findings regarding (1) Plaintiff's activities of daily living ("ADLs") and (2) Plaintiff's mental health. As to Plaintiff's ADLs, the ALJ found that Plaintiff was able to care for himself and his personal needs without assistance, care for his three children, shop, prepare simple meals, help with household chores and yard work, read, manage funds, and handle his own medical care. Tr. 20, 23–24 (citing Tr. 313–20 (Plaintiff's own function report), 510–12 (Dr. Owen's report), (Plaintiff's hearing testimony)).

The Court has reviewed the portions of the record cited by the ALJ. They fail to support his findings on Plaintiff's ADLs. In fact, these records *contradict* the ALJ's findings. For example, the ALJ found that Plaintiff could care for himself and his personal needs without assistance, Tr. 20, 23–24, but the evidence shows that Plaintiff has difficulties dressing, bathing, and feeding and needs reminders to keep up with personal care, grooming, medication, and appointments, Tr. 314–15, 317. The ALJ found that Plaintiff is the caregiver for his three children, Tr. 20, 23–24, but the evidence says otherwise, Tr. 314.[4] The ALJ found that Plaintiff can prepare simple meals, Tr. 20, 23–24, but Plaintiff expressly denied that he cooks or prepares meals. Tr. 63,

---

[4] Plaintiff's Adult Function Report, dated January 11, 2017, asked whether Plaintiff "take[s] care of anyone else such as wife/husband, children, grandchildren, parents, friend, other?" Tr. 314. Plaintiff checked the box for "No." *Id.*

315. He testified that his girlfriend cooks for him. Tr. 63; *see* Tr. 315 (Plaintiff relies on family for meals). The ALJ found that Plaintiff helps with household chores and yardwork, Tr. 20, 23–24, and Dr. Owen noted that Plaintiff "tries" to rake leaves "when he is feeling well," Tr. 511, but that is the only evidence that could support the ALJ's finding. Otherwise, the evidence shows that Plaintiff does no housework or yardwork because of pain in his knees. Tr. 315–16, 62–63. The ALJ found that Plaintiff manages his own funds, Tr. 20, 23–24, but Plaintiff reported that he cannot pay bills, handle a saving account, or use a checking account or money order, Tr. 316. His live-in girlfriend pays all the bills, Tr. 63, 65. The ALJ found that Plaintiff shops, Tr. 20, and indeed, Plaintiff reported that he shops in stores for hygiene products once per week. Tr. 316. Further, Plaintiff reported that he is able to count change, Tr. 316, but he says he is not good at it, Tr. 65. The Court has thoroughly reviewed the other evidence of record and does not find support for the ALJ's findings regarding Plaintiff's ADLs. The findings are not supported by substantial evidence.

There are other factual findings challenged by Plaintiff which, the Court agrees, are not supported by the record. As to Plaintiff's mental health for example, the ALJ found that "no provider has noted any learning barriers," Tr. 20, but Dr. Baum assessed "at least one learning disorder," Tr. 821, *see* Tr. 820, 822. The ALJ found that the record had "no mention of . . . issues with [Plaintiff]'s cognition or memory," Tr. 20, but the record contains numerous examples of Plaintiff's memory problems. For example, Plaintiff said he could not continue with his last job in 2018 because he could not remember the codes to unlock the doors. Tr. 50. As far back as 2013,

Dr. Brimberg noted memory problems in his list of diagnoses. Tr. 366. Dr. Schooley also noted impaired memory in November of 2016. Tr. 509.

The ALJ found that "no acceptable medical source designated to make equivalency findings has concluded that a mental listing is medically equaled." Tr. 21. However, Dr. Baum, who is an acceptable medical source, assessed limitations that would be disabling, Tr. 829. Perhaps most surprisingly, the ALJ found no record of any emergency-room visit or hospitalization for psychiatric treatment. Tr. 20. There is explicit evidence, however, that Plaintiff attempted suicide in 2018 and was hospitalized in an in-patient psychiatric unit for eight days. Tr. 799–818. Plaintiff testified about the hospitalization at the hearing. Tr. 56. Moreover, the record suggests, in at least two reports, that Plaintiff also attempted suicide by overdosing on pills and ended up on life support in late 2014 or 2015. Tr. 505, 508, 509 (Dr. Schooley's report in 2016); Tr. 511 (Dr. Owen's report in 2017).

The ALJ found that Plaintiff had "normal mood and affect." Tr. 20. This directly conflicts with the ALJ's own finding that Plaintiff suffers from two mood disorders: depression and anxiety, which are severe at step two. Tr. 18. The ALJ found that the objective evidence showed "no problems with temper control." Tr. 20. However, the 2016 and 2017 records from Dr. Schooley discuss Plaintiff's "temper" and his children's fear of him, Tr. 504 ("temper is bad . . . . kids are scared"), Tr. 505 (anger), Tr. 509 (anger), Tr. 640 (anger management), Tr. 641 (anger management), and the 2018 records from Plaintiff's counselor, Candace Stoughton, Licensed Master Social Worker ("LMSW"), discuss domestic violence charges against Plaintiff, Tr. 733

(charges from May 2018), 737 (sentenced to two years' probation and a 52-week domestic violence class).

Defendant argues that the record shows, for example, that Plaintiff's "providers routinely noted largely normal mental status examination findings." [Doc. 18] at 12 (citing Tr. 511, 514, 643, 736, 743–44). The Court has reviewed the four records cited by Defendant. Only one—if viewed in isolation—could be described as showing "normal mental status exam findings." Tr. 643. The other records, however, all show that Plaintiff's mood was depressed and anxious. Tr. 511, 736, 743–44.

Although Plaintiff challenges other findings in the ALJ's decision, *e.g.*, [Doc. 17] at 17, it is not necessary to examine them. The Court is satisfied that the ALJ's view of the record is not supported substantial evidence. The Court must be explicit here. It is not that the evidence is ambiguous. Rather, the Court finds that the ALJ's description of Plaintiff's ADLs and his mental state are contradicted by the record. They are not supported by substantial evidence, and contrary evidence overwhelms the ALJ's findings.[5]

The unsupported factual findings regarding the state of the record form one of the primary bases for the ALJ's rejection of PA Maroney's and Dr. Baum's opinions. Tr. 25. In other words, the ALJ rejected the opinions, in pertinent part, because they were inconsistent with the record. *Id.* However, as explained above, the ALJ's synthesis of the record is not supported by substantial

---

[5] The Court is also not convinced that the ALJ applied the proper legal standards. For example, the ALJ found that "the medical record [wa]s not supportive of a finding of disability, as the evidence of record d[id] not establish that [Plaintiff]'s mental symptoms would prevent him from performing all work-related activities." Tr. 23. This finding describes an improper legal standard. Plaintiff need not show that his mental health symptoms prevent him from performing *all* work-related activity; such a standard is inapplicable to disability claims.

evidence. This record is not inconsistent with PA Maroney's or Dr. Baum's opinion. True, a reasonable fact-finder could, potentially, evaluate the evidence and still determine that PA Maroney's and Dr. Baum's opinions are too restrictive; that is a determination for the Commissioner. But there is not substantial evidence to support a finding that the opinions are inconsistent with the record.

### **The remaining reasons provided by the ALJ for rejecting the source opinions are either improper or inadequate to support rejecting the opinions.**

Although ALJs need not discuss every piece of evidence, they are required to discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii) (2012)[6]). That is, when assessing a plaintiff's RFC, an ALJ must explain what weight he assigns to each medical source opinion and why. *Id.* When evaluating the opinion of any medical source, the ALJ must consider:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); *see* §§ 404.1527(c), 416.927(c). Not every factor will apply in each case, and therefore, an ALJ is not required to discuss every factor. Social Security Ruling ("SSR") 06-03p,[7] 2006 SSR LEXIS 5 at *5. "[T]he ALJ's decision is

---

[6] These regulations apply to this case because Plaintiff's claims were filed prior to March 27, 2017. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017).
[7] SSR 06-03p was rescinded for claims filed on or after March 27, 2017. 82 Fed. Reg. 15263 (Mar. 27, 2017). Because Plaintiff's claims were filed before March 27, 2017, SSR 06-03p applies to this case.

sufficient if it permits [the court] to follow the adjudicator's reasoning." *Keyes-Zachary*, 695 F.3d at 1164 (internal quotation marks omitted). "[T]he factors for weighing the opinions of acceptable medical sources set out in 20 C.F.R. §§ 404.1527(d), 416.927(d) apply equally to all opinions from medical sources who are not acceptable medical sources as well as from other non-medical sources." *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (internal quotation marks omitted). *See* §§ 404.1527(c), 416.927(c) (for claims such as Plaintiff's, filed before March 27, 2017, the general rule is that examining opinions are entitled to more weight than non-examining opinions, and treating opinions are entitled to the most weight of all).

Moreover, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity . . . because the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted)); *see Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) (same). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (internal brackets omitted) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). ALJs are required to provide "appropriate *explanations* for accepting or rejecting such opinions." SSR 96-5p,[8] 1996 SSR LEXIS 2, at *13, (emphasis added); *see Keyes-Zachary,* 695 F.3d at 1161 (same) (citing §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p,

---

[8] SSR 96-5p was rescinded for claims filed on or after March 27, 2017. 82 Fed. Reg. 15263 (Mar. 27, 2017). Because Plaintiff's claims were filed before March 27, 2017, SSR 96-5p applies to this case.

1996 SSR LEXIS 5, at *20. The ALJ's reasons must be specific and legitimate. *Chapo*, 682 F.3d at 1291.

### PA Maroney's Opinion

Here, the ALJ accorded "limited weight" to PA Maroney's opinion. Tr. 25. The ALJ explained that (1) PA Maroney was not an acceptable medical source, (2) his opined limitations were "extreme" and "not consistent with the evidentiary record," and (3) PA Maroney "merely checked boxes indicating limitations without providing supportive explanations beyond [Plaintiff]'s diagnosis." *Id.* The Court addresses these reasons in order of analytical convenience.

As explained above, there is not substantial evidence to support the ALJ's second reason for rejecting PA Maroney's opinion, i.e., that the opinion is inconsistent with the record. Nevertheless, the Court will examine the remaining reasons to determine whether they show application of the correct legal standards and substantial evidentiary support.

Plaintiff challenges the ALJ's first reason for rejecting PA Maroney's opinion. He argues that PA Maroney's status as a non-acceptable medical source is not relevant to the amount of weight his opinion merits and cannot sustain rejection of his opinion. [Doc. 17] at 13–19. The Court agrees. "[T]he factors for weighing the opinions of acceptable medical sources set out in 20 C.F.R. §§ 404.1527(d), 416.927(d) apply equally to all opinions from medical sources who are not acceptable medical sources as well as from other non-medical sources." *Frantz*, 509 F.3d at 1302 (internal quotation marks omitted). Certain medical sources, such as medical doctors, doctors of osteopathy, and psychologists, are considered "acceptable." 20 C.F.R. §§ 404.1502(a), 416.902(a). Providers with lesser education, such as physicians' assistants, nurse practitioners, and counselors, are considered "non-acceptable" medical sources or "other" medical sources. *See* SSR 06-03p,

2006 SSR LEXIS 5 at *4; §§ 404.1502(d), 416.902(d). This distinction matters in two contexts, neither of which is relevant here.[9] Therefore, the Court agrees that it was impermissible to reject PA Maroney's opinion on the ground that he was not an acceptable medical source.[10]

That leaves only one reason to reject PA Maroney's opinion: "that he merely checked boxes indicating limitations without providing supportive explanations beyond [Plaintiff]'s diagnosis." Tr. 25. In the abstract, or under different circumstances, this reason could be enough to properly reject a treating opinion. Evidentiary support is one of the regulatory factors that should be considered when weighing a source opinion. §§ 404.1527(c)(3), 416.927(c)(3). However, under the circumstances here, this reason alone is not adequate to support rejecting PA Maroney's treating opinion. There is more than a year's worth of records from PA Maroney and his colleagues at McLeod Medical Center, documenting Plaintiff's ongoing problems, including pain in his knees and depression. During that time period, he visited the clinic 12 times and saw PA Maroney himself seven times. These records obviously support PA Maroney's opinion. As merely one example, Plaintiff reported knee pain at many of his appointments, and PA Maroney ordered x-rays, which showed "extensive" degenerative joint disease in the knees. Tr. 847. The explanation as provided by the ALJ (that PA Maroney's opinion is merely check boxes without support) is not supported by substantial evidence.

---

[9] One situation arises when determining whether a source opinion must be accorded controlling weight pursuant to the treating-physician rule. SSR 06-03p, 2006 SSR LEXIS 5 at *3. As the name suggests, only opinions authored by physicians (or psychologists) in a treating relationship with the plaintiff are subject to the treating-physician rule. The fact that PA Maroney is not a physician is not a legitimate reason for rejecting his opinion; it means merely that his opinion is not subject to the treating-physician rule. *See id.* Secondly, when an ALJ evaluates a plaintiff's medically determinable impairments at step two, he may only rely on diagnoses made by acceptable medical sources. *Id.* Nevertheless, when the ALJ goes on to determine the severity of such impairments, the opinions of non-acceptable medical sources are relevant, important, and must be considered. *Id.* at *3–4; §§ 404.1527(f)(1), 416.927(f)(1).

[10] Additionally, Defendant does not appear to disagree. *See* [Doc. 18] at 9–11. He does not defend the ALJ's reasoning.

Dr. Baum's Opinion

The ALJ rejected Dr. Baum's opinion as "wildly inconsistent" with the record as a whole, including Plaintiff's ADLs, Dr. Owen's opinion, and Plaintiff's "return to work, at least on a part-time basis, and only stop[ing] due to physical issues." Tr. 25 (citing Tr. 822). As explained above, there is not substantial evidence to support the ALJ's characterizations of Plaintiff's ADLs or the record on Plaintiff's mental health. Consequently, there is not substantial evidence to support the ALJ's finding that Dr. Baum's opinion is inconsistent with the record as a whole. That leaves the ALJ's two remaining reasons for rejecting Dr. Baum's opinion. Neither is adequate.

As to the first remaining reason, the ALJ specifically mentioned that Dr. Baum's opinion was inconsistent with Dr. Owen's opinion. It was. But that is not a legally acceptable reason to reject Dr. Baum's opinion. Rather, when source opinions diverge, the ALJ must still apply the regulatory factors and explain why he adopts one over the other. *Reveteriano v. Astrue*, 490 F. App'x 945, 947 (10th Cir. 2012). Here, the ALJ failed to explain why he adopted Dr. Owen's opinion over Dr. Baum's, and no reason is discernable from the decision. Accordingly, inconsistency with Dr. Owen's opinion is not a proper reason to reject Dr. Baum's opinion.

The final remaining reason is also inadequate. The ALJ found that Plaintiff had returned to work part time and only stopped "due to physical issues." Tr. 25. That reason alone—especially here where so many of the ALJ's findings are contradicted by the record—cannot suffice to reject Dr. Baum's opinion.

## Conclusion

The ALJ's characterization of the record, in particular Plaintiff's ADLs and mental status, are not supported by substantial evidence. Accordingly, his rejection of two source opinions based

14

on inconsistency with the record cannot be sustained.  Remand is required for a closer look at the record and re-evaluation of PA Maroney's and Dr. Baum's opinions.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 17] is **GRANTED**.  The Commissioner's final decision is reversed, and this case is remanded for further proceedings in accordance with this opinion.  *See* § 405(g) (sentence four).

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**